Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Mary Shostak and Justice George Bridges. The case is No. 2-19-0817, Oroville-Bretman et al. plaintiffs' appellants v. Breaker Press Co. et al. defendants' appellees. Arguing for the appellants, James F. Bishop. Arguing for the appellees, Jack D. Franks and Illinois Integrity Fund, Natalie Harris. Arguing for the appellees, Sean Tenor and K&I Communications, Inc., Natalie Wilkins. Mr. Bishop, you may proceed. Thank you, Justice. We're here this morning to determine whether or not the trial court erred in dismissing plaintiff's complaint when affidavits of the parties' answers, sworn answers, and other matters created substantial issues of material effect. There can be no doubt that the complaint filed by the plaintiffs demanded trial by jury. It is a part of the court record. Likewise, there can be no doubt that the defendants' motion to dismiss was filed on May 20, 2019, pursuant to 735 ILCS 5-2-619, parent A and parent 9. I think it's pretty fundamental for all of us that the 619 motion admits the legal sufficiency of the complaint, but asserts or attempts to assert other affirmative matter to defeat the plaintiff's complaint. In this complaint and all other pleadings and supporting documents, it must be construed in the light most favorable to the plaintiff or the respondent to the motion to dismiss. These last theories would be supported by the case of Sandbloom, which will be quoted by both parties numerous times today, and that's 405 Hill App 3rd at 846 at Sequoia. In this case, we have affidavits, and the other documentation would really be the plaintiff's two requests to admit posed by the defendants back in June. Initially, the defendants posed 29 requests to admit, and in response to those requests to admit, the plaintiff initially admitted nine of the requests and objected to 20 requests. The defendants, in response to those objections, brought a motion before the court to overrule plaintiff Bretman's objections to the 20 requests to admit. That particular motion was filed on Thursday night, August 8, 2019, at 1009 PM. The attorney bishop did not receive notice of that until lunchtime on Friday, August 9, due to being in court on the morning of August 9 and returning to his office to find the ruling. There was 15.5 hours for a pre-scheduled court hearing on Friday, August 9, at 1.30 PM in McHenry. Despite Bishop's objection, the court entered an order on August 9 overruling plaintiff's objections and ordering the plaintiff to serve sworn responses to the 20 objected to requests to admit by August 15 at 5 PM. In that order of August 9, the court acknowledged that defendant's motion to overrule was not properly motioned for August 9. The court went ahead and entered an order overruling plaintiff's objections, I'm sorry, defendant's objections to the request to admit over the objection of plaintiff's attorney. On August 13, plaintiff filed a motion asking the court to reconsider its August 9 order. It refused. Pursuant to that court order, the plaintiff pursued answers to the request to admit under oath and answered the 20 objected to requests to admit, denying 13, no knowledge of 4, and admitting 3. Most importantly, request to admit number 29 was asking the plaintiff to admit that Exhibit B, the disputed grand jury proceeding transcript, is a true and accurate copy of the testimony plaintiff gave to a Cook County grand jury. Mr. Bretman's response to that request to admit was outright denial. Additionally, a counter affidavit was filed by Bretman at the end, denying the authenticity of the disputed grand jury transcript that was filed. All of the above creates existence of a substantial material fact and should have precluded dismissal by the court. Using the Denton citation set forth in the proceeding, which states that if a material and genuine issue of fact is raised and a jury has been demanded, a trial court may not weigh the evidence set forth in the affidavits and counter affidavits, thereby denying a trial by jury. Plaintiff proposed that the appellate court will reverse the trial court order and enter an order denying the defendant's 619 motion. The appellate court's jurisdiction here is de novo, which applies to any time the court is reviewing decisions, granting motions to dismiss pursuant to a 619. There are many citations for that, one being Scheffler v. Commonwealth Edison, which would be cited as, I'm sorry, I just have the Northeast citation, 955 Northeast 2nd, 1110, many other citations with respect to that principle. And pursuant to the court's authority under a de novo proceeding, plaintiffs would ask that the appellate court vacate the subsequent court orders of November 5th, 2019, wherein the trial court awarded attorney's fees to defendants and also the court order of December 5th, 2019, wherein the trial court awarded sanctions against plaintiff's counsel, Mr. Bishop. With that, I conclude my argument and stand ready to answer any questions. Thank you. Justice Bridges, do you have any questions? I do. Thank you, Justice. Counsel, I know you're familiar with Supreme Court Rule 341. However, your brief doesn't come close to complying with the rule. So why shouldn't this court strike your brief and dismiss this appeal? I'm sorry, I don't know how we missed points in authorities, but I believe that the brief is, and the subject matter here is so simple that I think the brief substantially complies with those rules. There was certainly no intention on the part of the plaintiff's counsel to ignore the rules. Rather, there were oversights. And again, I believe that the matter before the appellate court is pretty simple and that the brief substantially complies and covers the issues necessary for the bench to properly rule on this matter. Thank you. Also, counsel, you agree you didn't raise the Grand Jury Secrecy Act to prevent the trial court from considering Ivor Owens' affidavit before the trial court. Is that correct? No, Judge. I believe that I did at the hearing on August 21. The court will have to understand that that affidavit and the companion affidavit of Waxman were filed on the 90th day after the filing of the motion to dismiss, in exactly two days prior to the hearing before the appellate court. August. And also, counsel, the Grand Jury Secrecy Act, it does allow disclosure of matters before a grand jury when that disclosure is needed to prevent an injustice in another judicial proceeding. Or, for example, when the need for disclosure is greater than the continued secrecy, does it not? You are absolutely correct, Justice. It does, but there's a procedure that has to be followed in order to accomplish that. And in this case, the only procedure followed by the Cook County State's Attorney is continuously denying anyone's access to these grand jury proceedings. That was done by State's Attorney Bernie Kerry on numerous occasions back in the 70s, and it was followed through by State's Attorney Kim Foxx when she had her assistant denied access to those records. There's absolutely no lawful authority authorizing the release of the grand jury proceedings, any part or whole, and the allegations that Mr. Kerry went against his long-established opposition to the release of these records is just, as I said in my brief, incredulous. Thank you, Counsel Bishop. Justin McLaren, I have no further questions. Thank you. Justice Shostak, do you have any questions? No, I don't. Thank you. I don't have any questions either. Let's see. Appellate Counsel for the Integrity Fund may proceed, and I believe your name is That's correct, Your Honor. Natalie Harris on behalf of Appellate Illinois Integrity Fund. Can everyone hear me okay? Yes, you have eight minutes according to my notes. Is that correct? That's correct. That's what I've got as well, and I'll start my own timer here right now. Thank you. May it please the Court, this is Natalie Harris of Baron Harris Healy, and I'm here on behalf of Appellate Illinois Integrity Fund. This appeal seeks to reverse the trial court's decision that appellants' claims are improper SLAPP lawsuits. Those are strategic lawsuits against public participation that violate the Illinois Anti-SLAPP statute known as the Citizen Participation Act. The appellants agree that the test for determining whether their amended complaint violates the Citizen Participation Act is laid out in Illinois Supreme Court's decision in Sanholm, which Mr. Bishop did reference. Under Sanholm, the movants, in this case the Illinois Integrity Fund, must first demonstrate that their acts here, their publication of certain statements in the political campaign flyers, were in furtherance of a protected First Amendment right. Next under Sanholm, movants, again in this case Illinois Integrity Fund, must demonstrate that plaintiffs' claims are solely based on, related to, or in response to the movants' acts in furtherance of their First Amendment rights. To do this, the case law says that the movants must show that plaintiffs' claims are meritless and retaliatory. That's based on Sanholm and also the Ryan case which we've cited. Once the movants meet this burden, the plaintiffs must produce clear and convincing evidence that defendants' acts were not genuinely aimed at procuring favorable government action. The appellants in this case have not addressed any of these CPA analysis prongs in their briefing. Applying the correct analysis demonstrates that the Illinois Integrity Fund's conduct is protected by the First Amendment, that appellants' claims are both meritless and retaliatory, and that the appellants have submitted no evidence at all, let alone clear and convincing evidence, that the Illinois Integrity Fund's publication was not an affiliate procuring favorable government action, in this case, exercise of their First Amendment right. As for the first Sanholm prong, the appellants do not dispute and therefore they concede that the Illinois Integrity Fund's act of publishing the statements were in furtherance of their First Amendment right that's supported by the Garrido case. As for the second Sanholm prong, plaintiffs' claims are meritless because there are undisputed facts that disprove an essential element of plaintiffs' claim, and that's the standard also set forth in the Ryan case and the Garrido case. An essential element of appellants' defamation claims is falsity. The Illinois Integrity Fund brought forth affirmative evidence in the forms of affidavits and public records demonstrating the truth of the fire statements that are at issue. Another essential element of appellants' defamation claims, because they are undisputedly public officials, is demonstrating that the Illinois Integrity Fund published the flyer statements with actual malice, which means that they harbored serious doubts as to their truth. The Illinois Integrity Fund disputed, I'm sorry, submitted undisputed facts in an affidavit from former Cook County State's Attorney, Nicholas Iavarone, disproving both truth and actual malice. Iavarone's affidavit demonstrates that Mr. Bretman testified under oath as to the following facts before a grand jury on July 23, 1975, that Bretman belonged to Legion of Justice in the late 60s and 70s, that Bretman participated in intelligence gathering operations on the Communist Party, that the Legion of Justice gathered information using surveillance of personnel, surreptitious entering into headquarters and forcible entry upon premises, that Bretman participated in two break-ins and took various property, that Bretman was involved in planning a similar break-in in another target organization, that Bretman was with Joseph Powers on the night that Mr. Powers destroyed the Elgin Church using explosives, and when Bretman was either involved in or planned additional Legion of Justice activities, including forcible entries to obtain contributor lists of what were perceived as Communist organizations. In addition, the Lakewood Police Department records demonstrate that the blog threat against Jack Frank's life was traced to Ursula Schuster's home. It is undisputed that the blog threat was traced to their home, and it is undisputed that the blog threat itself stated that the poster knows a fellow who specializes in terminating weasels of all kinds. His prices are very reasonable, $5,000 each. If he needed to look like an accident, $10,000 each. Let me know on this blog. It is also undisputed that the weasel to be terminated for a fee that is referenced in that blog post is Jack Frank's. Despite multiple opportunities, the appellants never objected to the consideration of or provided any rebuttal facts contradicting this evidence presented by the Illinois Integrity Fund. In any 2619 motion to dismiss, which is what we have here, once an affirmative matter is properly raised, which could defeat the claim, the plaintiff must then come forward with some evidence, at least establishing a genuine issue of material fact. Otherwise, the motion will be granted. The only additional burden established by the Citizens Participation Act on the plaintiff is required to come forward with clear and convincing evidence that a genuine issue of material fact exists in order to defeat the motion. That is the right case, right development group. I posit that not only have appellants not come forward with clear and convincing evidence, they have come forward with none at all. Again, once the defendant meets his burden, as we have done here, presenting affirmative evidence through sufficient affidavits, then the burden shifts to the plaintiff, and unless the plaintiff then files a counter-affidavit to refute the evidentiary facts in the defendant's supporting affidavit, those facts are deemed admitted. Neither Bretman's counter-affidavit nor Schuster's counter-affidavit rebut any of the facts set forth in the I. Averroni affidavit or the public records. For example, Bretman's counter-affidavit generally denies the truth of, quote, any reference contained in the disputed grand jury transcript referring to his being a member of the Legion of Justice. That is a very narrow denial of nonspecific statements that do not even appear in the grand jury transcript. Nothing in paragraph one rebuts any facts in the I. Averroni affidavit. And paragraph two, which relates to the RFA number 29 that Mr. Bishop also referenced, confirms that the only basis for Mr. Bretman's assertion that the transcript attached to I. Averroni's affidavit is not true or accurate is that it does not include his second day of testimony. In short, he concedes that the section that is attached is true and accurate. Schuster's affidavit suffers from the same infirmities. Her first statement is an unsupported legal conclusion that is not cognizable under rule 191A. She does not dispute the substance of the threat that appeared in the blog post. And in paragraph two, she admits that that threat to terminate the weasel, Jack Franks, was traced to her home by police. Appellants fail to rebut any of the facts demonstrating the truth of the flyer statement, and therefore the claims based on those statements are meritless. The appellants also completely ignore the retaliatory analysis required under Sandhome. The trial court correctly ruled that based on the potential validity of the claims, which is none, the conspiratorial simultaneous filing of the lawsuits in concert with other aggrieved candidates, Joe Tirio, Charles Wheeler, and Michael Rain, also weighed in favor of a retaliatory intent and the damages requested, including exemplary damages that will serve to punish defendants and deter similar conduct, as well as the fact that there's no reference to any reputational damage in the claim for damages. And finally, on the damage front that they never went after, any of the original publishers of the RIP from the headline articles all demonstrate that, in fact, the intent was retaliatory. Having demonstrated the meritless and retaliatory nature of the underlying claims and appellants having come forth with no evidence on rebuttal whatsoever, we request that the underlying ruling of the trial court be affirmed, the case being dismissed under the Citizens Participation Act and fees awarded accordingly. Thank you. Thank you. Justice Bridges, do you have any questions? I do. Thank you, Justice. Counsel, the CPA will allow speech or petitions and furtherance of a constitutional right and will immune those from liability as long as the speech is genuinely aimed at, I believe what it says is procuring favorable governmental action result or outcome. Can you tell us what governmental outcome were your clients seeking with these flyers? Yes, Your Honor, and give me just a moment to reference the cases, if you will. Your Honor, there is quite, there are several cases that establish that the governmental outcome of voting in an election and influencing the electorate qualifies under that category of the CPA. In other words, that first front prong of governmental action is undisputedly covered by seeking to speak in favor of a political action or an election. I believe that is the Dorito case and the Goral case say that without reservation. So at your position, these flyers were in fact that type of speech to assist the voters? That's correct, Your Honor. The speech was political speech and the nature of the speech was to inform voters about the quality and background history and facts of the candidates who were running for public elected office and therefore to inform the electorate about facts necessary for them to make a well-informed decision as a citizen at the ballot box. Okay, you're not suggesting that the Citizens Participation Act, when it protects speech, will protect slander or libel, are you? Absolutely not, Your Honor, which is why we argue that the statements themselves, aside from being political speech, are also substantially true, substantial truth under the Capotes case, obviously being a complete defense to defamation. Okay, was there any certification or attestation declaring that the 1975 grand jury transcripts of Brettman was accurately transcribed? The certification we have, Your Honor, is the testimony of Mr. Iavarone, who was there firsthand asking the questions and hearing the responses, and he attested in his affidavit to the fact that the transcript attached to his affidavit was a true and accurate account. I'm familiar with that. I'm sorry, counsel, I'm familiar with that in the record, but I'm referring to the attachment to the appellate court. Was there any of the certification there? Your Honor, in the copy that I received, which was from the papers of Mr. Waxman, the attorney who filed it in the appellate record, that particular copy kept in his files did not include the certification. All right, thank you, counsel. Justice Claren, I have no further questions. Thank you. Justice Shostak, do you have any questions? Yeah, one quick question is kind of a follow-up on Justice Bridges. The second element is meritless, and the truth goes to the merit, does it not? Yes, it does. And so if the statements were true, there is no fraud or slander? That's correct, Your Honor. If we can demonstrate, in fact, not only just that they are true, but under the case law that they are substantially true, in other words, that the statements as reflected in the flyers capture the gist and sting of the actual truth and create no more harm than the actual true statements would have caused then under Illinois law, the statements are not actionable as defamation per se, and in this case, that would mean that they are meritless. Correct, and allowed under, okay, I've got that. Thank you. I have nothing further. Thank you, Your Honor. Thank you. I believe there's a claim that we don't have jurisdiction because the notice of appeal was filed prematurely, is that correct? Yes, Your Honor. Could you... Just to be clear, Natalie Wilkins for the other co-defendant is prepared to make that argument, Your Honor. On that issue? Yes, Your Honor. Okay, fine, then I have no further questions. George, do you have any questions based upon what Mary raised? I do not. Thank you, Justice. Okay, thank you. Ms. Wilkins, you may proceed. Thank you. Thank you. In the court, my name is Natalie Wilkins, and I represent the appellee Sean Tenner in K&I Communications Inc. I concur with the arguments that were just presented by Ms. Harris, and we use the remaining time to discuss appellant's failure to comply with the Illinois Supreme Court rules. As has been already discussed amongst this panel, appellants have demonstrated a total disregard for the Illinois Supreme Court rules throughout the course of this appeal. From the outset, appellant's notice of appeal was premature, making jurisdiction improper under Supreme Court Rule 303A1. Appellants then proceeded to submit an opening brief that utterly fails to comply with the form requirements under Supreme Court Rule 341. Appellees each raised these procedural violations in their response briefs, and appellants wholly failed to address these issues in their reply, which amounts to an admission of their violations. Now, during appellant's argument, he stated that he is now seeking to appeal the November and December orders regarding sanctions and fees. However, it should be pointed out that the notice of appeal only states that the order does not have jurisdiction to appeal or reverse those orders regarding the fees or sanctions. In addition, appellees also raised this argument in their response briefs, and again, appellants failed to address this until simply asking the court for the reversal of the order for fees and sanctions today without any citation to any supporting law or otherwise. Now, as was also discussed amongst this panel, appellants have wholly failed to comply with Supreme Court Rule 341, and I believe that counsel for appellant stated that this subject matter is so simple that appellant's oversight should be overlooked, that they substantially comply and cover the issues necessary for this bench to make a determination. That is simply not true in this case. Appellants failed to cite to the record throughout their brief, causing appellees to have to defend against claims, guess about their arguments, fill in blanks without any guidance as to what exactly the appellants were trying to argue. This is exactly what the Illinois Supreme Court rules were created and the purpose that they were intended to adequately form their arguments and present them clearly before us warrants dismissal of this appeal in addition to the jurisdictional issues. I will accept questions now. Justice Bridges, do you have any questions? I have no questions of this counsel. Thank you. Thank you. Justice Shast, do you have any questions? No questions. None. Thank you. Thank you. Ms. Wilkins, although the appeal may have been premature, once there was a final order entered, was the appeal then justiciable and appropriate? Your Honor, the cases are split somewhat in this regard. The Supreme Court has held that plaintiff's premature notice of appeal is ineffective, and the citation for that is, I believe you pronounce it Chan v. Schleim, 138 Ill.2D 469-1990. That appears to be good law still today. I believe what you're referring to is somewhat of what we could refer to as the savings clause, which is under A2. However, especially in the context as though it seems appellant is seeking to reverse the subsequent orders following his notice of appeal, I think that the proper protocol is that he then had to file an amended notice of appeal. Certainly to have the November 5th and December 5th orders fall under that, but I think that that's also proper under four premature notices of appeals with regard to the August 21st order as well. Have you ever heard of the marriage of North or Henry North? Yes, I believe that was under the discussion under the rule. Does that have any application here? I think it does, and again, what I'm saying is that the cases are split somewhat in this regard, and I think the fact that appellants have wholly failed to address this issue in the first instance, raise it on their own when they had ample opportunity to do so, to kind of help us to debrief and understand this issue, I think that's a problem in and of itself. But just an amended notice of appeal, that I think would have been warranted if they're going to come in and ask for the reversal of all three orders. Okay, I have no further questions. Does the panel have any other questions based upon the questions previously raised? I have no further questions. Thank you. Thank you. Thank you, Ms. Wilkins. Thank you. Mr. Bishop, you may make rebuttal. Thank you, Your Honor. I want to pay most attention to Mr. Bretman's responses to the request to admit, wherein the defendants asked specific questions taken specifically from different portions of the disputed grand jury transcript, and asked Mr. Bretman if those 20-some allegations were true, and did he in fact state in each and every case, Mr. Bretman stated no and denied those allegations. Request to admit number 29 was a specific denial that the testimony transcript, the transcript that was presented, which is the subject matter of this entire proceeding, was true and correct, and he denied it in every aspect, totally, but that was not his testimony. Later, in the counter affidavit, he only addressed the issue that had been presented by the Averron or the Waxman affidavits. It is interesting to note that with respect to the timeliness of the notice of appeal, plaintiff was between a rock and a hard place in that we were running out of 30 days, and I was afraid that if I did not file the notice of appeal, my 30 days would run, because the other side had chosen not to file any motions for fees or if I hadn't filed that appeal, and then subsequently we proceeded on the appeal. I believe that the facts, testimony, affidavits, and mostly the request to admit create a material, substantial issue of facts, and the court, the trial court, could not enter an order dismissing the plaintiff's complaint when there had been a jury demand. That's the overriding law here, and there is just no question that the dispute arises out of this transcript, which in one of the cases being the one of the appellate court cases back in the 70s, being the second one, In re Grand Jury 655, the appellate court pointed out that they had no idea where that transcript that was attached to the criminal complaint of Thomas, Thomas, his last name escapes me at this minute, but where the case where it was attached to the appendix, the appellate court said we have no idea where that came from, it had no effect on our decision, and it is not apparent that there was any authority for that. That's been the position of everybody from the beginning since 1975 through last summer when the Cook County state's attorney refused to disclose any of the transcripts pertaining to that. So that to me is the issue here, and I ask the court to reverse and remand this matter and to grant the appellant's request to also vacate the orders entered with respect to the fees and sanctions which all come out of the same decision of the trial court. Thank you. Thank you. Justice Bridges, do you have any questions? I have no questions. Thank you, Justice. Thank you. Justice Shostak, do you have any questions? Yeah, so you're submitting though that the fact that your client is disputing the correctness of that grand jury testimony is basically you're saving grace here. That is absolutely correct, Justice. All right, thank you. It was pointed out in the brief that as far back as 1979 in an article in the Chicago Tribune, he denied any of those accusations which were made way back then. Okay, thank you. Any other questions? No. Thank you. No other questions. Thank you. I have one. Assuming arguendo that the transcript was incorrect, would that make any difference to the issue of good faith insofar as unless the defendants knew that the transcript was incorrect, how would it be actionable to the extent that as far as they're concerned it's true and correct? I'm sorry, Justice. I don't know. If they knew that it was not accurate and they pursued the flyers that they sent out? My point is they claimed that they were presenting a grand jury transcript. You claim that the transcript is incorrect. My point is unless they thought that the transcript was incorrect and they were going to either intentionally libel or slander your client or with reckless disregard decided to libel or slander your client, what difference does it make whether the transcript was accurate or not? Don't you have to allege in addition to the fact that the transcript isn't correct the elements or the intent or indicia of bad faith that I've referenced? I don't necessarily agree, Justice. They said they just came out not only with respect to the transcript, but many of the other allegations contained within the flyers, for instance, the one about indictments. Neither party had ever been indicted for anything whatsoever. I think that they had some kind of a duty to make an investigation to determine whether or not that was true when it had been denied by the parties and when it had never been disclosed in a lawful manner. The quotes of the justice in the In re Grand Jury 655 case where they say, we have no idea where this came from. I was practicing law back in the late 60s, early 70s, and I know what was going on. Lots of stuff was unlawful back in those days. When it had been unlawfully released, and these people should know the Grand Jury testimony is sacred, and it is secret. They were reckless in my judgment when they went ahead and published this without chasing down whether or not it was or wasn't accurate. Thank you. Thank you. I have no further questions. Does the panel have any questions further? I have no further questions. Thank you. Thank you. The case will be taken under advisement and at this position rendered in at time. I now declare the oral argument closed. Thank you and goodbye. Thank you.